## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                            :      Chapter 11
                                                  :
PANDA TEMPLE POWER, LLC, <u>et al</u>.,           :      Case No. 17-_____ (_____)
                                                  :
Debtors. [1]                                      :      Joint Administration Pending
                                                  :

------------------------------------------------------------ x

### MOTION OF DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363, FED. R. BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING MAINTENANCE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, SUBJECT TO CERTAIN MODIFICATIONS; AND (II) AUTHORIZING CONTINUATION OF DEPOSIT PRACTICES

The debtors and debtors in possession in the above-captioned cases (together, the

"**Debtors**") hereby move (the "**Motion**") for entry of interim and final orders substantially in the

forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u> (respectively, the "**Interim Order**" and the

"**Final Order**"), under Sections 105(a), 345, and 363 of title 11 of the United States Code (the

"**Bankruptcy Code**"), Rule 6003 of the Federal Rules of Bankruptcy Procedure (the

"**Bankruptcy Rules**"), and Rule 2015-2 of the Local Rules of Bankruptcy Practice and

Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local**

**Rules**"), (i) authorizing, but not directing, the Debtors to continue to maintain and use their

existing cash management system, including maintenance of existing bank accounts, checks, and

business forms, subject to certain modifications described herein; (ii) granting the Debtors a

waiver of certain bank account and related requirements of the Office of the United States

---

[1] The Debtors in these cases are Panda Temple Power, LLC and Panda Temple Power Intermediate Holdings II, LLC. The last four digits of Panda Temple Power, LLC's federal tax identification number are 8214. Panda Temple Power Intermediate Holdings II, LLC is a disregarded entity for federal income tax purposes and, as such, does not have a federal tax identification number. The Debtors' mailing address is 5001 Spring Valley Road, Suite 1150 West, Dallas, TX 75244.

Trustee for the District of Delaware (the "**U.S. Trustee**") to the extent that such requirements are inconsistent with the Debtors' practices under their existing cash management system or other actions described herein; and (iii) authorizing, but not directing, the Debtors to continue to maintain and use certain deposit practices notwithstanding the provisions of Bankruptcy Code Section 345(b).  In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Alison R. Zimlich, Chief Financial Officer, Chief Risk Officer, and Treasurer of Panda Temple Power, LLC in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the "**Zimlich Declaration**").[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 345, and 363, Bankruptcy Rule 6003, and Local Rule 2015-2.

## BACKGROUND

2.      On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Zimlich Declaration and fully incorporated herein by reference.

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Zimlich Declaration.

3.     The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107(a) and 1108.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

## RELIEF REQUESTED

4.     By this Motion, the Debtors seek entry of Interim and Final Orders, substantially in the forms of <u>Exhibit A</u> and <u>Exhibit B</u> attached hereto, (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of existing bank accounts, checks, and business forms, subject to certain modifications described herein; (ii) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtors' practices under their existing cash management system or other actions described herein; and (iii) authorizing, but not directing, the Debtors to continue to maintain and use certain deposit practices notwithstanding the provisions of Bankruptcy Code Section 345(b). The Debtors also request that the Court authorize and direct all banks with which the Debtors maintain accounts to continue to maintain, service, and administer such accounts.

## BASIS FOR RELIEF

A.     **Overview**

5.     The Debtors' cash management system (the "**Cash Management System**") consists of an integrated network of bank accounts that enables the Debtors to collect and disburse cash generated by Panda Temple Power, LLC ("**Temple I**").  The Cash Management System is governed by the terms and conditions of Temple I's prepetition Credit Agreement[3] and the related Security Deposit Agreement.[4]

---

[3] The "**Credit Agreement**" means that certain Credit Agreement, dated as of March 6, 2015 (as amended, supplemented or otherwise modified from time to time) by and among Temple I, the lenders from time to time party

6.      The Debtors' Cash Management System has been in effect since their formation approximately three years ago.  Historically, the Debtors maintained 15 bank accounts (the "**Prepetition Bank Accounts**"), of which 14 are at Union Bank and the other is at Bank of Texas.  All of the Prepetition Bank Accounts are held in the name of Temple I.

7.      As described in the Zimlich Declaration, prior to the Petition Date, Twin Eagle Resource Management, LLC ("**Twin Eagle**"), the Debtors' energy manager, collected substantially all revenue generated by Temple I's operations and transferred those receivables monthly to Temple I's Revenue Account (as defined below) (net of amounts owed to Twin Eagle by Temple I).  Each month, Temple I submitted a withdrawal certificate to Union Bank requesting that money be withdrawn from the Revenue Account and deposited in the remaining Prepetition Bank Accounts in accordance with a waterfall (the "**Waterfall**") set forth in the Security Deposit Agreement. Once deposited in the appropriate Prepetition Bank Account in accordance with the Waterfall, funds in such accounts were then used to pay various expenses of the Debtors in the ordinary course of business.

8.      By this Motion, the Debtors are not seeking authority to continue the Cash Management System in the manner maintained prepetition (i.e., distributing all revenue in the Revenue Account in accordance with the Waterfall).  Rather, the Debtors have opened a new bank account (the "**New Operating Account**" and, together with the Prepetition Bank Accounts, the "**Debtor Bank Accounts**") and will direct all revenue received or generated postpetition to

---

thereto (the "**Prepetition Lenders**"), Wilmington Trust, National Association, as administrative agent (the "**Prepetition Agent**"), MUFG Union Bank, N.A. ("**Union Bank**"), as collateral agent, and the other financial institutions party from time to time thereto.

[4] The "**Security Deposit Agreement**" means that certain Security Deposit Agreement, dated as of March 6, 2015, by and among Temple I, the Prepetition Agent, and Union Bank, as collateral agent and depositary.

be deposited directly into the New Operating Account.  The New Operating Account is at Bank of Texas, which is a U.S. Trustee-approved depositary.

9.      Twin Eagle will continue to collect revenue generated from Temple I's operations and will deposit such revenue in the New Operating Account.  In addition, all amounts funded pursuant to and in accordance with the Debtors' debtor in possession financing facility (the "**DIP Facility**")[5] will be deposited into the New Operating Account.  The Debtors' use of all cash deposited in the New Operating Account will be subject to a budget in connection with the DIP Facility, in form and substance satisfactory to the Required Lenders (as defined in both the Prepetition Credit Agreement and the DIP Credit Agreement) and approved by an order of this Court (the "**Approved Budget**").

B.      **The Debtors' Prepetition Cash Management System and the Prepetition Bank Accounts**[6]

10.     The Debtors' prepetition Cash Management System has historically been managed by the Debtors at their headquarters in Dallas, Texas, where they oversaw the administration of the Prepetition Bank Accounts to effect the collection, disbursement, and movement of cash.  The Debtors' cash was reconciled daily for all active accounts, and the Prepetition Bank Accounts were otherwise reconciled monthly.  The Debtors intend to manage the Cash Management System, as modified in the manner described herein, in the same way postpetition.

---

[5] The Debtors have consulted with the ad hoc group of lenders under that certain Credit Agreement, dated as of March 6, 2015 (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**Prepetition Credit Agreement**") (such lenders, the "**Prepetition Lenders**") and the lenders under that certain Superpriority Senior Secured Debtor-in-Possession Credit Agreement (as amended, supplemented or otherwise modified from time to time in accordance with the terms thereof, the "**DIP Credit Agreement**") with respect to the New Operating Account and the postpetition Cash Management System.

[6] The following is a summary of the prepetition Cash Management System and is qualified in its entirety by the provisions of the Credit Agreement and the Security Deposit Agreement.

11.     A detailed schedule of the Debtor Bank Accounts is annexed hereto as

Attachment 1,[7] a summary of which is included in the chart below:

| Account Name[8] | Financial Institution | Account Number |
|---|---|---|
| Revenue Account | Union Bank | ******4526 |
| Operating Account | Union Bank | ******4527 |
| Interest Payment Account | Union Bank | ******4528 |
| Principal Payment Account | Union Bank | ******4529 |
| Insurance Proceeds Account | Union Bank | ******4530 |
| Title Event Account | Union Bank | ******4531 |
| Liquidity and Major Maintenance Reserve Account | Union Bank | ******4532 |
| Term DSR Account | Union Bank | ******4533 |
| Prepayment Account | Union Bank | ******4534 |
| Permitted Debt Payment Account | Union Bank | ******4535 |
| True-Up Account | Union Bank | ******4536 |
| Project L/C Cash Collateral Account | Union Bank | ******4537 |
| DSR L/C Cash Collateral Account | Union Bank | ******4538 |
| Punch List Expenses Sub-Account[9] | Union Bank | ******4539 |
| Local Operating Account | Bank of Texas | ******1990 |
| New Operating Account | Bank of Texas | ******9952 |
| Utilities Adequate Assurance Account[10] | Bank of Texas | ******9941 |

12.     <u>Prepetition Waterfall</u>.  As discussed above, the Cash Management System

was instituted in accordance with the requirements set forth in the Credit Agreement and allowed

for the revenues generated by Temple I to be allocated consistent with the Waterfall established

by the Security Deposit Agreement.   Generally, all revenues and proceeds arising from the

---

[7] The Debtors believe, and have undertaken reasonable efforts to ensure, that <u>Attachment 1</u> lists all of the bank accounts that comprise the Debtors' Cash Management System.  In the event that any bank account has been inadvertently omitted from <u>Attachment 1</u>, the Debtors request that the relief sought by this Motion be deemed to apply to such account.

[8] Capitalized terms used in this column shall refer to the account referred to in the corresponding row.

[9] The Punch List Expenses Sub-Account was funded with a one-time deposit on the effective date of the Security Deposit Agreement and no additional deposits are permitted to be made into the Punch List Expenses Sub-Account after such date.  As of the Petition Date, there are no amounts remaining in the Punch List Expenses Sub-Account.

[10] As set forth in the *Motion of Debtors for Order Under 11 U.S.C. §§ 105(a) and 366 (I) Prohibiting Utility Companies from Altering or Discontinuing Service on Account of Prepetition Invoices, (II) Approving Deposit as Adequate Assurance of Payment, and (III) Establishing Procedures for Resolving Requests by Utility Companies for Additional Assurance of Payment*, filed concurrently herewith, the Debtors have also opened a segregated utilities adequate assurance account.

operation of Temple I were deposited in the Revenue Account.  Pursuant to the Waterfall, those amounts were then deposited into various accounts in order to make payments on account of, among other things, operating and maintenance costs, debt service payments under the Credit Agreement, voluntary prepayments under the Credit Agreement, payments in connection with interest rate hedge agreements or commodity agreements, and permitted tax distributions.  A detailed summary of the Waterfall and diagrams depicting the prepetition and postpetition Cash Management Systems are annexed hereto as Attachments 2 and 3, respectively.  All funds deposited in the Prepetition Bank Accounts were only permitted to be invested in liquid investments and/or cash equivalents.

13.    Extraordinary Revenue.  Pursuant to the Security Deposit Agreement, in the event Temple I received certain extraordinary payments prior to the Petition Date, such payments were not deposited into the Revenue Account but were instead deposited in separate accounts, as set forth in the following chart:

| Type of Proceeds | Account |
|---|---|
| Insurance proceeds resulting from a casualty, eminent domain, or condemnation event | Insurance Proceeds Account |
| Insurance proceeds in connection with any defect of title or lien on Debtors' property | Title Event Account |
| Proceeds from the incurrence of permitted debt under the Credit Agreement | Prepayment Account |
| Proceeds in excess of $15,000,000 received from the sale of certain assets | Prepayment Account |
| Payments received in connection with any unwind, termination, or sale of the revenue put under the Debtors' Initial Commodity Agreement (as defined in the Credit Agreement) | Prepayment Account |

To the extent any such extraordinary proceeds are received postpetition, the Debtors intend to

deposit such amounts in the New Operating Account.

**C.      The Debtors Should Be Authorized to Maintain, Subject to Certain Modifications, Their Existing Cash Management System and the Debtor Bank Accounts**

14.      The Debtors' ability to maintain the Cash Management System and implement necessary changes to such system, including opening the New Operating Account, is important to the Debtors' business operations during the Chapter 11 Cases and their goal of maximizing value for the benefit of all parties in interest.  To require the Debtors to adopt an entirely new cash management system at this early and critical stage would be expensive, impose needless administrative burdens, and cause undue disruption.  Any disruption in the collection of funds as currently implemented would adversely (and perhaps irreparably) affect the Debtors' ability to maximize estate value.  Moreover, such a disruption would be wholly unnecessary because the deposit of substantially all revenue into the New Operating Account is a simple and efficient way for the Debtors to manage their collections.  In addition, to the best of the Debtors' knowledge, Union Bank and Bank of Texas are each financially stable institutions insured by the Federal Deposit Insurance Corporation ("**FDIC**").  For the aforementioned reasons, maintenance of the existing Cash Management System, with the modifications discussed above, is in the best interests of the Debtors, their estates, and all interested parties.

15.      As part of the relief requested herein, and to ensure that their transition into Chapter 11 is as smooth as possible, the Debtors seek an order authorizing the Debtors to (i) maintain and continue to use the Debtor Bank Accounts, including but not limited to those accounts listed on Attachment 1 hereto, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (ii) pay ordinary course bank fees in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date; (iii) perform their obligations under the documents and agreements governing the Debtor Bank

Accounts; (iv) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession; and (v) deposit funds into and disburse funds from the New Operating Account in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the New Operating Account.

16.     If the relief requested herein is granted, the Debtors will implement appropriate mechanisms to ensure that no payments will be made on any debts incurred by the Debtors prior to the Petition Date, other than those authorized by this Court.  To prevent the possible inadvertent payment of prepetition claims against the Debtors, except those otherwise authorized by the Court, the Debtors will work closely with the banks at which the Debtor Bank Accounts are maintained (each a "**Bank**" and, collectively, the "**Banks**") to ensure appropriate procedures are in place to prevent checks issued by the Debtors prepetition from being honored absent this Court's approval and to ensure that no third-party with automatic debit capabilities is able to debit amounts attributable to the Debtors' prepetition obligations.

17.     The Debtors request that no Bank that implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Motion (a) at the direction of the Debtors to honor such prepetition check or item, (b) in a good faith belief that the Court has authorized such prepetition check or item to be honored, or (c) as a result of a good faith error made despite implementation of reasonable item handling procedures, be deemed to be liable to the Debtors or to their estates on account of such prepetition check or other item being honored postpetition.  The Debtors believe that such flexibility accorded the Banks is necessary to induce the Banks to continue providing cash management services to the Debtors.

18.     The Debtors further request that the Banks be authorized to deduct from the appropriate Debtor Bank Accounts the Banks' fees and expenses (the "**Bank Fees and Expenses**"), and that no liens on any Debtor Bank Account take priority over the Bank Fees and Expenses except as set forth in any deposit agreements between the Debtors and the Banks.

19.     The Debtors believe both Union Bank and the Bank of Texas are party to a Uniform Depository Agreement with the U.S. Trustee.  Accordingly, within fifteen (15) days of the date of entry of an Interim or Final Order granting this Motion, the Debtors will (i) contact each Bank, (ii) provide each Bank with the Debtors' employer identification numbers, and (iii) identify each of their accounts held at such Bank as held by a debtor in possession in a bankruptcy case.  Nevertheless, in the event that the Debtors hold one or more accounts at a Bank that is not a party to a Uniform Depository Agreement with the U.S. Trustee, the Debtors will use their good faith efforts to cause such Bank to execute a Uniform Depository Agreement in a form prescribed by the Office of the U.S. Trustee within forty-five (45) days of the date of entry of an Interim or Final Order granting this Motion.

20.     In the interest of maintaining the continued and efficient operation of the Cash Management System, as modified, during the pendency of the Chapter 11 Cases, the Debtors request that all Banks be authorized and directed to continue to administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and, when requested by the Debtors in their sole discretion, to honor any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Account on account of a claim against the Debtors arising on or after the Petition Date.

21.     The Debtors further request that they be authorized to implement such additional reasonable changes to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts and opening any additional bank accounts following the Petition Date (the "**Additional New Accounts**") wherever the Debtors deem that such accounts are needed or appropriate and whether or not the banks in which the accounts are opened are designated approved depositories in the District of Delaware.  Notwithstanding the foregoing, any Additional New Accounts that the Debtors open will be at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any Additional New Account that the Debtors open will be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "Debtor in Possession" account by the relevant bank.  The Debtors request that the relief sought by this Motion extend to any Additional New Accounts and that any order approving this Motion provide that the Additional New Accounts are deemed to be Debtor Bank Accounts that are similarly subject to the rights, obligations, and relief granted in such order. The Debtors will provide the U.S. Trustee with prompt notice of any Debtor Bank Accounts that they close or Additional New Accounts that they open.  In furtherance of the foregoing, the Debtors also request that the relevant banks be authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor Bank Account(s) or Additional New Account(s).

**D.    The Debtors Should Be Granted Authority to Continue to Use Existing Checks and Business Forms**

22.    Local Rule 2015-2(a) provides:

> Where the debtor uses pre-printed checks, upon motion of the debtor, the Court may, without notice and hearing, permit the debtor to use its existing checks without the designation "Debtor-in-Possession" and use its existing bank accounts. However, once the debtor's existing checks have been used, the debtor shall, when reordering checks, require the designation "Debtor-in-Possession" and the corresponding bankruptcy number on all such checks.

Del. Bankr. L.R. 2015-2(a).

23.    Although the Debtors generally do not contemplate using the Prepetition Bank Accounts after the Petition Date, to the extent any withdrawals are necessary and authorized by this Court, in order to minimize expenses to their estates, the Debtors seek authorization to continue using all checks substantially in the forms existing immediately prior to the Petition Date, without reference to the Debtors' status as debtors in possession; provided, however, that in the event the Debtors generate new checks during the pendency of the Chapter 11 Cases other than from their existing stock of checks, such checks will include a legend referring to the Debtors as "Debtor in Possession."  The Debtors also seek authority to use all correspondence and other business forms (including, without limitation, letterhead, purchase orders, and invoices) without reference to the Debtors' status as debtors in possession.[11]

24.    Changing the Debtors' existing checks, correspondence, and other business forms would be expensive, unnecessary, and burdensome to the Debtors' estates. Further, such changes would disrupt the Debtors' business operations and would not confer any benefit upon parties that deal with the Debtors.  For these reasons, the Debtors request that they

---

[11] Although the operating guidelines established for debtors in possession by the U.S. Trustee would require the Debtors to obtain and use new checks bearing the "Debtor in Possession" designation, the Debtors do not believe that such guidelines impose any limitation on the Debtors' other correspondence and business forms.  Nevertheless, out of an abundance of caution, the Debtors seek explicit authority to continue using their existing correspondence and business forms without reference to the Debtors' status as debtors in possession.

be authorized to use their existing check stock, correspondence, and other business forms without being required to place the label "Debtor in Possession" on any of the foregoing.

**E.     The Debtors Should Be Granted a Waiver of Certain Requirements of the U.S. Trustee**

25.     The Debtors further request, pursuant to Bankruptcy Code Sections 105(a) and 363, that this Court grant a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with (i) the Debtors' existing practices under the Cash Management System, as modified, or (ii) any action taken by the Debtors in accordance with any order granting this Motion or any other order entered in the Chapter 11 Cases.  To supervise the administration of chapter 11 cases, the U.S. Trustee has established certain operating guidelines for debtors in possession.   These requirements (the "**UST Requirements**") require chapter 11 debtors to, among other things: (i) close all existing bank accounts and open new debtor in possession bank accounts; (ii) establish one debtor in possession account for all estate monies required for the payment of taxes, including payroll taxes; (iii) maintain a separate debtor in possession account for cash collateral; and (iv) obtain checks for all debtor in possession accounts that bear (a) the designation "Debtor In Possession," (b) the bankruptcy case number, and (c) the type of account.   The UST Requirements are designed to demarcate clearly prepetition transactions and operations from postpetition transactions and operations, and to prevent the inadvertent postpetition payment of prepetition claims.  The opening of the New Operating Account and the discontinued use of the Prepetition Bank Accounts serves, in large part, the objectives sought to be achieved by the UST Requirements.  In addition, as set forth above, the Debtors submit that (i) they are able to work with the Banks to ensure that this goal of separation between the prepetition and postpetition

periods is observed and (ii) enforcement of certain of these UST Requirements would disrupt the Debtors' operations and impose a financial burden on the Debtors' estates.

26.     In light of the complexity of the Cash Management System, it would be onerous for the Debtors to meet the UST Requirement to close all existing bank accounts and open new debtor in possession accounts.   Indeed, this requirement would unnecessarily inconvenience the Debtors.

27.     Further, it would be unnecessary and inefficient to require the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for tax payments and to deposit to such accounts sufficient funds to pay any tax liability (when incurred). The Debtors can pay their tax obligations most efficiently from New Operating Account, and the U.S. Trustee will have wide latitude to monitor the flow of funds into and out of such account. The creation of new debtor in possession accounts designated solely for tax obligations would be unnecessarily burdensome.

28.     In addition, it is unnecessary to require the Debtors to abide by the UST Requirement to establish specific debtor in possession accounts for cash collateral.  As set forth in the Debtors' motion for approval of debtor in possession financing and authority to use cash collateral filed contemporaneously herewith, the Debtors have provided significant safeguards (negotiated in good faith with parties in interest) to ensure that parties with security interests in the Debtors' cash are adequately protected and that such parties have been provided with notice of the proposed use of such cash collateral.

**F.     The Debtors Should Be Authorized to Continue Their Deposit Practices**

29.     As part of the Cash Management System, as modified, the Debtors expect that (i) funds will be deposited into the New Operating Account on a regular basis and (ii) the

remaining Prepetition Bank Accounts will be maintained but unused during the Chapter 11 Cases (the "**Deposit Practices**").  The Debtors request (i) authorization to deposit funds in the New Operating Account, as set forth above, and to maintain the Debtor Bank Accounts in accordance with existing practice under the Cash Management System, subject to any reasonable changes the Debtors may implement to the Cash Management System, and (ii) a waiver of the deposit requirements of Bankruptcy Code Section 345(b), on an interim basis, to the extent that such requirements are inconsistent with the Deposit Practices.  For the avoidance of doubt, to the extent any of the Debtor Bank Accounts may be classified as investment accounts, or to the extent any of the Debtors' routine deposits into any of the Debtor Bank Accounts may be regarded as investment activity, the Debtors hereby seek authorization to continue to deposit funds into such Debtor Bank Accounts in accordance with existing practices, notwithstanding the requirements of Bankruptcy Code Section 345(b).

## APPLICABLE AUTHORITY

**A.    The Bankruptcy Code Permits the Debtors to Continue to Use the Cash Management System and the Debtor Bank Accounts**

30.    Bankruptcy Code Section 363(c)(1) authorizes a debtor in possession to "use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The authority granted by Bankruptcy Code Section 363(c)(1) extends to a debtor in possession's continued use of its customary cash management system and, thus, supports the relief requested.  See, e.g., Charter Co. v. Prudential Ins. Co. Am. (In re Charter Co.), 778 F.2d 617, 621 (11th Cir. 1985) (indicating that an order authorizing the debtor to employ a cash management system that was "usual and customary in the past" was "entirely consistent" with Section 363(c)(1)).

31.    Bankruptcy Code Section 105(a) also authorizes this Court to permit the Debtors to continue to use the Cash Management System, including maintenance of their existing Prepetition Bank Accounts and the opening of the New Operating Account.  Section 105(a) vests in this Court the power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  The continuation of the Cash Management System, as modified, is essential to the efficient administration of the Chapter 11 Cases and to the Debtors' efforts to maximize estate value for all parties in interest.  Indeed, one court, in another context, has recognized that a centralized cash management system "allows efficient utilization of cash resources and recognizes the impracticalities of maintaining separate cash accounts for the many different purposes that require cash."  In re Columbia Gas Sys., Inc., 136 B.R. 930, 934 (Bankr. D. Del. 1992), aff'd in part and rev'd in part, 997 F.2d 1039 (3d Cir. 1993).  Therefore, the relief requested is appropriate under Bankruptcy Code Section 105(a).

32.    In addition, numerous courts, including this Court, in other large chapter 11 cases have authorized debtors to continue to use their existing cash management systems.  See, e.g., In re Chaparral Energy, Inc., Case No. 16-11144 (LSS) (Bankr. D. Del. May 11, 2016); In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re Pension Worldwide, Inc., Case No. 13-10061 (PJW) (Bankr. D. Del. Jan. 15, 2013); In re B456 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012); In re Vertis Holdings, Inc., Case No. 12-12821 (CSS) (Bankr. D. Del. Nov. 1, 2012); In re Graceway Pharm., LLC, Case No. 11-13036 (MFW) (Bankr. D. Del. Sept. 30, 2011).  Indeed, bankruptcy courts have routinely permitted chapter 11 debtors to continue to use their existing cash management systems, generally treating requests for such relief as a relatively "simple matter."  In re Baldwin-United

Corp., 79 B.R. 321, 327 (Bankr. S.D. Ohio 1987); see also In re Columbia Gas Sys., Inc., 136

B.R. at 934.

**B.      This Court Should Waive the UST Requirements to Permit the Debtors to Maintain the Cash Management System, as Modified**

33.     The maintenance of the Cash Management System, as requested in this

Motion, is consistent with the Debtors' authority to use property of the estate in the ordinary

course of business pursuant to Bankruptcy Code Section 363(c)(1).   Accordingly, this Court

should grant the Debtors a waiver of the UST Requirements to the extent that such requirements

conflict with the Debtors' existing practices under the Cash Management System, as modified, or

any action taken by the Debtors in accordance with any order granting this Motion or any other

order entered in the Chapter 11 Cases.

34.     Moreover, compelling the Debtors to alter their current cash management

practices and to modify the Cash Management System to comply with the UST Requirements

would risk severe disruption to the Debtors' businesses and jeopardize the Debtors' ability to

maximize value for all parties in interest.   Cf. In re Gaylord Container Corp., 1993 WL 188671,

at *3, 13 (E.D. La. 1993) (adopting the bankruptcy court's findings of fact and conclusions of

law, which included a finding that the banking requirements of the Office of the United States

Trustee for the District of Louisiana "represent a substantial burden on any debtor and, in this

case, resulted in the incurrence of extraordinary unquantifiable costs by [the debtor] associated

with the confusion engendered by the implementation of new policies and procedures to comply

with such rules, and due to the substantial restrictions that such rules placed on the debtor's

treasury functions").   This factor alone justifies the relief that the Debtors are seeking.   See 11

U.S.C. § 105(a) ("The court may issue any order, process, or judgment that is necessary or

appropriate to carry out the provisions of this title.").

**C.    This Court Has the Authority to Permit the Debtors to Continue Their Deposit Practices**

35.    Bankruptcy Code Section 345(a) authorizes a debtor in possession to make deposits of estate money in a manner "as will yield the maximum reasonable net return on such money, taking into account the safety of such deposit." 11 U.S.C. § 345(a).  If a deposit is not "insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States," Bankruptcy Code Section 345(b) provides that the debtor must require that the entity with which the deposit is made obtain a bond in favor of the United States that is secured by the undertaking of an adequate corporate surety.  See 11 U.S.C. § 345(b).

36.    This Court has discretion to waive the Bankruptcy Code Section 345(b) requirements "for cause."  11 U.S.C. § 345(b).  In In re Service Merchandise Co., Inc., the court indicated that the existence of "cause" should be determined based upon the totality of the circumstances taking account of factors such as: (i) the sophistication of the debtor's business; (ii) the size of the debtor's business; (iii) the amount of investments involved; (iv) the ratings of the financial institutions at which the debtor's funds are held; (v) the complexity of the case; (vi) the safeguards in place within the debtor's own business to ensure the safety of funds; (vii) the debtor's ability to reorganize in the face of a failure of one or more of the financial institutions; (viii) the benefit to the debtor; (ix) the harm, if any, to the estate; and (x) the reasonableness of the debtor's request for relief from the Section 345(b) requirements in light of the overall circumstances of the case.  240 B.R. 894, 896 (Bankr. M.D. Tenn. 1999).

37.    While the Debtors believe they are in compliance with Bankruptcy Code Section 345(b), to the extent they are not, the Debtors respectfully request that this Court (i) authorize the Debtors to continue to make deposits in accordance with the Deposit Practices and

(ii) exercise its discretion to waive the requirements of Bankruptcy Code Section 345(b), on an interim basis, to the extent that such requirements are inconsistent with the Deposit Practices. The Debtors submit that the circumstances of the Chapter 11 Cases warrant such relief.

38.    The Debtors are sophisticated entities with a complex Cash Management System.  The Debtor Bank Accounts are each held at stable financial institutions that are insured by the FDIC and, thus, the Debtors' funds are safe (up to applicable FDIC limits).  Furthermore, in light of the anticipated regular deposits to, and withdrawals from, the New Operating Account, it would be especially disruptive, unnecessary, and wasteful to require the posting of a bond to the extent that the balance of the account exceeds FDIC insurance limits at a given time.

39.    This Court and other courts have granted requests to approve the use of deposit practices that do not comply strictly with Bankruptcy Code Section 345(b).  See, e.g., In re Chaparral Energy, Inc., Case No. 16-11144 (LSS) (Bankr. D. Del. May 11, 2016); In re Paragon Offshore PLC, Case No. 16-10383 (CSS) (Bankr. D. Del. April 6, 2016); In re Verso Corporation, Case No. 16-10163 (KG) (Bankr. D. Del. Feb. 23, 2016); In re Samson Resources Corporation, Case No. 15-11934 (CSS) (Bankr. D. Del. Sept. 22, 2015); In re Quicksilver, Inc., Case No. 15-11880 (BLS) (Bankr. D. Del. July 7, 2015); In re Energy Future Holdings Corp., No 14-10979 (CSS) (Bankr. D. Del. June 4, 2014);  In re OnCure Holdings, Inc., Case No. 13-11540 (KG) (Bankr. D. Del. July 24, 2013); In re B456 Sys., Inc., Case No. 12-12859 (KJC) (Bankr. D. Del. Dec. 11, 2012).  Accordingly, the Court should authorize the Debtors to deposit funds in accordance with the Deposit Practices and grant a waiver of the requirements of Bankruptcy Code Section 345(b) on an interim basis to the extent that the requirements are inconsistent with the Deposit Practices.

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

40.     Certain isolated aspects of the relief requested herein may, if granted, be subject to Bankruptcy Rule 6003, which provides for authorization to be obtained within twenty-one (21) days after the Petition Date if necessary to avoid immediate and irreparable harm.  See Fed. R. Bankr. P. 6003(b).  The Debtors submit that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and, thus, Bankruptcy Rule 6003 has been satisfied.

41.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code Section 363(b), the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).  As described above, the relief that the Debtors request in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

42.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

## NOTICE

43.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the administrative agent for the Debtors'

prepetition secured financing; (c) Stroock & Stroock & Lavan LLP and Young Conaway Stargatt & Taylor, LLP, co-counsel to the lenders under the Debtors' proposed postpetition secured financing and co-counsel to the ad hoc group of lenders under the Debtors' prepetition secured financing; (e) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (e) the United States Attorney's Office for the District of Delaware; (f) the Internal Revenue Service; (g) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (h) the Attorney General for Texas; (i) the Banks; and (j) all parties entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").  As this Motion is seeking "first day" relief, this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m). The Debtors submit that, under the circumstances, no other or further notice is required.

   44. In the event the Court enters an Interim Order granting this Motion, within forty-eight (48) hours thereafter, the Debtors propose to serve notice of such entry on the Initial Notice Parties and all parties that have filed prior to such service date requests for notice pursuant to Bankruptcy Rule 2002.  The notice will provide that any objections to the relief granted in the Interim Order must be filed with the Court and served upon counsel for the Debtors no later than seven (7) days prior to the final hearing to be held on the Motion (the "**Objection Deadline**").  If an objection is timely filed and served prior to the Objection Deadline, such objection will be heard at the final hearing on the Motion.  If no objections are timely filed and served, the Debtors' counsel will file a certification of counsel to that effect attaching a final form of order.

**WHEREFORE**, the Debtors respectfully request that the Court enter Interim and Final Orders, substantially in the forms attached hereto as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: April 17, 2017
    Wilmington, Delaware

/s/ *John H. Knight*
John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: knight@rlf.com
        heath@rlf.com
        schlauch@rlf.com
        delillo@rlf.com

- and –

Keith A. Simon
Annemarie V. Reilly
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone: 212-906-1200
Fax: 212-751-4864
Email: keith.simon@lw.com
        annemarie.reilly@lw.com

*Proposed Counsel for Debtors and Debtors in Possession*

## ATTACHMENT 1

**Schedule of Debtor Bank Accounts**

Schedule of Debtor Bank Accounts

| Financial Institution | Address | Account Number(s) | Account Holder | Account Type |
|---|---|---|---|---|
| MUFG Union Bank, N.A. | Ivy Wegener<br>Cash Control Officer<br>1251 Avenue of the Americas, 19th Floor<br>New York, NY 10020<br>Tel: (646) 452-2007<br>Fax: (646) 452-2001<br>Email: ivy.wegener@unionbank.com | ******4526 | Panda Temple Power, LLC | Revenue Account |
| MUFG Union Bank, N.A. | See above | ******4527 | Panda Temple Power, LLC | Operating Account |
| MUFG Union Bank, N.A. | See above | ******4528 | Panda Temple Power, LLC | Interest Payment Account |
| MUFG Union Bank, N.A. | See above | ******4529 | Panda Temple Power, LLC | Principal Payment Account |
| MUFG Union Bank, N.A. | See above | ******4530 | Panda Temple Power, LLC | Insurance Proceeds Account |
| MUFG Union Bank, N.A. | See above | ******4531 | Panda Temple Power, LLC | Title Event Account |
| MUFG Union Bank, N.A. | See above | ******4532 | Panda Temple Power, LLC | Liquidity and Major Maintenance Reserve Account |
| MUFG Union Bank, N.A. | See above | ******4533 | Panda Temple Power, LLC | Term DSR Account |

| MUFG Union Bank, N.A. | See above | ******4534 | Panda Temple Power, LLC | Prepayment Account |
|---|---|---|---|---|
| MUFG Union Bank, N.A. | See above | ******4535 | Panda Temple Power, LLC | Permitted Debt Payment Account |
| MUFG Union Bank, N.A. | See above | ******4536 | Panda Temple Power, LLC | True-Up Account |
| MUFG Union Bank, N.A. | See above | ******4537 | Panda Temple Power, LLC | Project L/C Cash Collateral Account |
| MUFG Union Bank, N.A. | See above | ******4538 | Panda Temple Power, LLC | DSR L/C Cash Collateral Account |
| MUFG Union Bank, N.A. | See above | ******4539 | Panda Temple Power, LLC | Punch List Expenses Sub-Account |
| Bank of Texas | Marcos Castro<br>Treasury Client Services Professional<br>5956 Sherry Lane, Suite 600<br>Dallas, TX 75225<br>Tel: (214) 525-7674<br>Fax: (214) 987-8867<br>Email: mcastro@bankoftexas.com | ******1990 | Panda Temple Power, LLC | Local Operating Account |
| Bank of Texas | See above | ******9952 | Panda Temple Power, LLC | New Operating Account |
| Bank of Texas | See above | ******9941 | Panda Temple Power, LLC | Utilities Adequate Assurance Account |

2

## ATTACHMENT 2

## Summary of Prepetition Waterfall

Summary of Prepetition Waterfall[1]

Prior to the Petition Date, substantially all revenues and proceeds arising from the operation of Temple I were deposited in the Revenue Account.  Each month, Temple I submitted a withdrawal certificate to Union Bank requesting that money be withdrawn from the Revenue Account and applied in accordance with the Waterfall (such monthly transfer date, the "**Funding Date**").  Pursuant to the Waterfall, amounts on deposit in the Revenue Account were applied in the following order of priority, to the extent there were sufficient funds in the Revenue Account:

i.    First, to the Operating Account and the Local Operating Account[2] to pay for operating and maintenance costs that would become due and payable in the following 45 days.

ii.    Second, to the Prepetition Agent and any other agents under the Credit Agreement, Union Bank, and the L/C Issuing Banks (as defined in the Credit Agreement) to pay any fees, costs, expenses and indemnification payments due and payable, or becoming due and payable prior to the next Funding Date.

iii.    Third, at the sole discretion of Temple I, to voluntarily prepay advances outstanding under the Credit Agreement.

iv.    Fourth, to the Interest Payment Account, until the amount on deposit therein equaled interest, fees, costs, and regularly scheduled settlement payments under any interest rate hedge agreement due and payable on the next scheduled payment date (each such date a "**Scheduled Payment Date**").

v.    Fifth, to the Principal Payment Account, until the amount on deposit therein equaled principal debt payments due and payable to the Prepetition Lenders on the next Scheduled Payment Date, termination payments due and payable under any interest rate hedge agreements or the Debtors' Initial Commodity Agreement,[3] and any other obligations due and payable on the next Scheduled Payment Date.

vi.    Sixth, to the True-up Account, an amount equal to the sum of (x) any interim settlement amounts paid to Temple I by 3M under the Initial Commodity

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

[2] The Local Operating Account provides a means for Temple I to pay smaller construction or operating and maintenance costs.  The maximum amount of funds that may be kept in the Local Operating Account is $5,000,000 at any one time, and funds kept in the Local Operating Account may only be used to pay amounts that will become due and payable within the next 30 days.

[3] The "**Initial Commodity Agreement**" means that certain ISDA 2002 Master Agreement, dated as of July 17, 2012, between Temple I and Employee Retirement Income Plan Trust of Minnesota, Mining and Manufacturing Company ("**3M**") (collectively with the Schedule to Master Agreement, ISDA Credit Support Annex to the Schedule, and the Revenue Put Option Confirmation in connection therewith).

Agreement plus (y) any final settlement amounts due and payable by Temple I to 3M under the Initial Commodity Agreement, minus (z) any amounts already paid by Temple I to 3M under the Initial Commodity Agreement.

vii.    <u>Seventh</u>, (a) to the Term DSR Account, until the amount on deposit therein was equal to the principal and interest and ordinary course settlement payments anticipated to be paid during the following six months in accordance with the Credit Agreement, and (b) to the Prepayment Account, until the amount on deposit therein was equal to the outstanding principal amount of DSR Letter of Credit Advances (as defined in the Security Deposit Agreement).

viii.    <u>Eighth</u>, to the Liquidity and Major Maintenance Reserve Account, until the amount on deposit therein was equal to expenditures and costs for scheduled overhauls or major maintenance for Temple I anticipated to be due and payable in the following six months.

ix.    <u>Ninth</u>, to the Permitted Debt Payment Account, until the amount on deposit therein equaled amounts due and payable on or prior to the next Scheduled Payment Date for certain Permitted Debt (as defined in the Credit Agreement).

x.    <u>Tenth</u>, as a distribution for permitted tax distributions, so long as there was no Default or Event of Default outstanding under the Credit Agreement.[4]

---

[4] The Project Company is a disregarded entity for tax purposes, and income is reported on the tax return of an upstream entity.

|US-DOCS\83158999.8||

**ATTACHMENT 3**

**Diagram of Cash Management System**

# Panda Temple Power, LLC
Cash Management System
(Prepetition Structure)



# Panda Temple Power, LLC
### Cash Management System
### (Postpetition Structure)



**EXHIBIT A**

Proposed Interim Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                               :      Chapter 11
                                                     :
PANDA TEMPLE POWER, LLC, et al.,                     :      Case No. 17-_____ (_____)
                                                     :
     Debtors.<sup>1</sup>                            :      Jointly Administered
                                                     :
------------------------------------------------------------ x

## INTERIM ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363, FED. R. BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING MAINTENANCE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, SUBJECT TO CERTAIN MODIFICATIONS, AND (II) AUTHORIZING CONTINUATION OF DEPOSIT PRACTICES

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an Interim Order under Bankruptcy Code Sections 105(a), 345, and 363, Bankruptcy Rule 6003, and Local Rule 2015-2, (i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash management system, including maintenance of existing bank accounts, checks, and business forms, subject to certain modifications set forth in the Motion; (ii) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee to the extent that such requirements are inconsistent with the Debtors' practices under their existing cash management system or other actions described in the Motion or this Interim Order; and (iii) authorizing, but not directing, the Debtors to continue to maintain and use certain deposit practices notwithstanding the provisions of Bankruptcy Code Section 345(b); and the Court

---

[1] The Debtors in these cases are Panda Temple Power, LLC and Panda Temple Power Intermediate Holdings II, LLC.  The last four digits of Panda Temple Power, LLC's federal tax identification number are 8214.  Panda Temple Power Intermediate Holdings II, LLC is a disregarded entity for federal income tax purposes and, as such, does not have a federal tax identification number. The Debtors' mailing address is 5001 Spring Valley Road, Suite 1150 West, Dallas, TX 75244.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

having reviewed the Motion and the Zimlich Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and should be granted on an interim basis to the extent set forth herein; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized to maintain and use their existing Cash Management System, subject to the modifications described in the Motion (including, for the avoidance of doubt, not complying with the prepetition Waterfall), and shall maintain through the use thereof accurate and detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Interim Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

3.      Any existing deposit agreements between the Debtors and the banks at which the Debtor Bank Accounts are maintained (each a "**Bank**" and, collectively, the "**Banks**") shall continue to govern the postpetition cash management relationship between the Debtors and

the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Interim Order.

4.     The Debtors are authorized to (i) maintain any and all of the Debtor Bank Accounts in existence as of the Petition Date, including, but not limited to, the Debtor Bank Accounts identified on <u>Attachment 1</u> to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (ii) pay ordinary course bank fees in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date; (iii) perform their obligations under the documents and agreements governing the Debtor Bank Accounts; (iv) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession; and (v) deposit funds into and disburse funds from the New Operating Account in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the New Operating Account.

5.     The Banks and Debtors' financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, (i) to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to payments permitted by an order of this Court, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that

sufficient funds are available in the applicable accounts to make the payments and (ii) to debit the Debtors' accounts in the ordinary course of business for all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

6.      In each instance in which the Debtors hold Debtor Bank Accounts at banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Interim Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

7.      Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks, correspondence, and other business forms without alteration or change and without the designation "Debtor in Possession" or a bankruptcy case number imprinted upon them.  Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Interim Order.

8.      *Nunc pro tunc* to the Petition Date, and subject to the terms of this Interim Order, all Banks at which the Debtor Bank Accounts are maintained are authorized to continue to administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and to receive, process, honor, and pay, to the

extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising prior to the Petition Date shall be honored.

9.    The relief granted in this Interim Order is extended to any new bank account opened by the Debtors at the Banks after the date hereof.

10.    All Banks provided with notice of this Interim Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Debtor Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

11.    Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Interim Order.  No Bank that implements such handling procedures and then honors a prepetition check or item drawn on any account that is the subject of this Interim Order (x) at the direction of the Debtors to honor such prepetition check or item, (y) in the good faith belief that the Court has authorized such prepetition check or item to be honored, or (z) as a result of a good faith error made despite implementation of such handling procedures,

shall be deemed to be liable to the Debtors or their estates on account of such prepetition check or item being honored postpetition or otherwise in violation of this Interim Order.

12.     The Debtors, with the consent of the Required Lenders, are authorized to implement such reasonable changes, consistent with this Interim Order, to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts or opening any additional bank accounts following the Petition Date (the "**Additional New Accounts**") wherever the Debtors deem that such accounts are needed or appropriate, and to enter into any ancillary agreements related to the foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreements with the Banks.  Notwithstanding the foregoing, the Debtors shall open such Additional New Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any Additional New Account that the Debtors open shall be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "Debtor in Possession" account by the relevant bank.  The Additional New Accounts are deemed to be Debtor Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Interim Order.  The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor Bank Account(s) or Additional New Account(s), and (b) accept and hold, or invest, the Debtors' funds in accordance with the Debtors' instructions; *provided* that the Banks shall not have any liability to any party for relying upon such representations.  In the event that the Debtors open or close any Debtor Bank Accounts(s) or Additional New Account(s), such opening or closing shall be timely

indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee, counsel to the administrative agent for the Debtors' prepetition secured financing, counsel to the ad hoc group of lenders under the Debtors' prepetition secured financing, counsel to the lenders under the Debtors' proposed postpetition secured financing, and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases within fifteen (15) days; provided, further, however, that the opening or closing of any bank account shall be in accordance with the terms of the Debtors' proposed postpetition secured financing.

13.     The Debtors are authorized to deposit funds in accordance with existing practices under the Cash Management System as in effect as of the Petition Date (subject to the modifications set forth in the Motion and this Interim Order), and any other reasonable changes to the Cash Management System consistent with this Interim Order that the Debtors may implement.

14.     In the course of providing cash management services to the Debtors, the Banks are authorized, without further order of this Court, to deduct the applicable service fees from the appropriate Debtor Bank Accounts in the ordinary course of business, when such fees are otherwise due and payable.

15.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

16.     The requirement of the UST Guidelines to establish separate accounts for cash collateral and/or tax payments is hereby waived except as otherwise required by any applicable agreements between the Debtors and the Banks.

17.     Nothing contained in the Motion or this Interim Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date; provided that, for the avoidance of doubt, the (x) Prepetition Lenders' perfected lien on and security interest in any cash and other amounts (including, without limitation, the proceeds thereof) held in the Prepetition Bank Accounts (whether perfected by possession, control or otherwise), shall be deemed to be automatically attached and vested in such cash or other amounts (including, without limitation, the proceeds thereof) to the extent transferred to the New Operating Account or any Additional New Account as of the date of the opening of such New Operating Account or Additional New Account, as applicable, and (y) the Prepetition Lenders shall have automatically (and without any further action) a valid, perfected lien on and security interest in the New Operating Account and any Additional New Account arising as a result of the operations of the Debtors or otherwise (and all amounts and other assets deposited therein), in the case of each of (x) and (y), without the need to enter into any deposit account control agreements or similar documents or take any other actions to perfect their security interest in such cash or other amounts; provided, further, that the Prepetition Lenders may enter into deposit account control agreements or similar documents in respect of the New Operating Account and/or any Additional New Accounts without seeking modification of the automatic stay under section 362 of the Bankruptcy or any other court approval.

18.     Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the individual disbursements of each Debtor, regardless of which Debtor is responsible for payment of such fees.

19.     Notwithstanding anything to the contrary in this Interim Order or to the Motion, any payment, obligation, or other relief authorized by this Interim Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition financing, or any budget in connection therewith (including, without limitation, the Approved Budget), approved by this Court in these Chapter 11 Cases.

20.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Interim Order, shall be deemed an admission as to the validity of the underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

21.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

22.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Interim Order is necessary to avoid immediate and irreparable harm.

23.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

24.     The Debtors are authorized to take such actions and to execute such documents necessary to effectuate the relief granted by this Interim Order in accordance with the Motion.

25.     The final hearing (the "**Final Hearing**") on the Motion shall be held on _____, 2017, at_____:_____ _.m.,  prevailing  Eastern  Time.     Any  objections  or responses to entry of a final order on the Motion shall be filed on or before 4:00 p.m., prevailing Eastern Time, on _____, 2017, and shall be served on: (a) Panda Temple Power, LLC, 5001 Spring Valley Road, Suite 1150 West, Dallas, Texas 75244 (Attn: Edmund Daniels, Esq.); (b) Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Attn: Annemarie V. Reilly, Esq.); (c) Richards, Layton & Finger, One Rodney Square 920 North King St., Wilmington, Delaware 19801 (Attn: John H. Knight, Esq.); (d) Stroock & Stroock & Lavan LLP, 180 Maiden Lane, New York, NY 10038 (Attn: Joanne Lau, Esq.) and Young Conaway Stargatt & Taylor, LLP, 1000 North King Street, Wilmington, DE 19801 (Attn: Ashley Jacobs, Esq.), co-counsel to the lenders under the Debtors' proposed postpetition secured financing and co-counsel to the ad hoc group of lenders under the Debtors' prepetition secured financing; (e) counsel to the official committee of unsecured creditors, if one is appointed; and (f) the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Wilmington, DE 19801 (Attn: Hannah Mufson McCollum, Esq.).  In the event no objections to entry of the Final Order on the Motion are timely received, this Court may enter such Final Order without need for the Final Hearing.

26.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Interim Order.

Dated: April ___, 2017
            Wilmington, Delaware

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT B

Proposed Final Order

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------- x
In re:                                                   :    Chapter 11
                                                         :
PANDA TEMPLE POWER, LLC, et al.,                         :    Case No. 17-_____ (_____)
                                                         :
        Debtors. [1]                                     :    Jointly Administered
                                                         :
-------------------------------------------------------- x
```

### FINAL ORDER UNDER 11 U.S.C. §§ 105(a), 345, AND 363, FED. R. BANKR. P. 6003, AND DEL. BANKR. L.R. 2015-2 (I) AUTHORIZING MAINTENANCE OF EXISTING CASH MANAGEMENT SYSTEM, INCLUDING MAINTENANCE OF EXISTING BANK ACCOUNTS, CHECKS, AND BUSINESS FORMS, SUBJECT TO CERTAIN MODIFICATIONS, AND (II) AUTHORIZING CONTINUATION OF DEPOSIT PRACTICES

Upon the motion (the "**Motion**")[2] of the Debtors for entry of a Final Order under

Bankruptcy Code Sections 105(a), 345, and 363, Bankruptcy Rule 6003, and Local Rule 2015-2,

(i) authorizing, but not directing, the Debtors to continue to maintain and use their existing cash

management system, including maintenance of existing bank accounts, checks, and business

forms, subject to certain modifications set forth in the Motion; (ii) granting the Debtors a waiver

of certain bank account and related requirements of the U.S. Trustee to the extent that such

requirements are inconsistent with the Debtors' practices under their existing cash management

system or other actions described in the Motion or this Final Order; and (iii) authorizing, but not

directing, the Debtors to continue to maintain and use certain deposit practices notwithstanding

---

[1] The Debtors in these cases are Panda Temple Power, LLC and Panda Temple Power Intermediate Holdings II, LLC. The last four digits of Panda Temple Power, LLC's federal tax identification number are 8214. Panda Temple Power Intermediate Holdings II, LLC is a disregarded entity for federal income tax purposes and, as such, does not have a federal tax identification number. The Debtors' mailing address is 5001 Spring Valley Road, Suite 1150 West, Dallas, TX 75244.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

the provisions of Bankruptcy Code Section 345(b); and the Court having reviewed the Motion and the Zimlich Declaration; and the Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on a final basis, as set forth herein.

2.      All objections to the entry of this Final Order, to the extent not withdrawn or settled, are overruled.

3.      The Debtors are authorized to maintain and use their existing Cash Management System, subject to the modifications described in the Motion (including, for the avoidance of doubt, not complying with the prepetition Waterfall), and shall maintain through the use thereof accurate and detailed records reflecting all transfers of funds under the terms and conditions provided for by the existing agreements with the institutions participating in the Cash Management System, except as modified by this Final Order.  In connection with the ongoing utilization of the Cash Management System, the Debtors shall continue to maintain accurate and detailed records with respect to all transfers of cash so that all transactions may be readily ascertained, traced, and recorded properly.

4.     Any existing deposit agreements between the Debtors and the banks at which the Debtor Bank Accounts are maintained (each a "**Bank**" and, collectively, the "**Banks**") shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect unless otherwise ordered by the Court, and the Debtors and the Banks may, without further order of this Court, agree to and implement changes to the Cash Management System and cash management procedures in the ordinary course of business, including, without limitation, the opening and closing of bank accounts, subject to the terms and conditions of this Final Order.

5.     The Debtors are authorized to (i) maintain any and all of the Debtor Bank Accounts in existence as of the Petition Date, including, but not limited to, the Debtor Bank Accounts identified on Attachment 1 to the Motion, in the same manner and with the same account numbers, styles, and document forms as are currently employed; (ii) pay ordinary course bank fees in connection with the Debtor Bank Accounts, including any fees arising prior to the Petition Date; (iii) perform their obligations under the documents and agreements governing the Debtor Bank Accounts; (iv) for all purposes, treat the Debtor Bank Accounts as accounts of the Debtors in their capacities as debtors in possession; and (v) deposit funds into and disburse funds from the New Operating Account in the ordinary course by all usual means, including checks, wire transfers, ACH transfers, drafts, and electronic fund transfers or other items presented, issued, or drawn on the New Operating Account.

6.     The Banks and Debtors' financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, (i) to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue

postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to payments permitted by an order of this Court, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments and (ii) to debit the Debtors' accounts in the ordinary course of business for all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to the Banks as service charges for the maintenance of the Cash Management System.

7. In each instance in which the Debtors hold Debtor Bank Accounts at banks that are party to a Uniform Depository Agreement with the U.S. Trustee, within fifteen (15) days of entry of this Final Order the Debtors shall (a) contact each bank, (b) provide the bank with each of the Debtors' employer identification numbers and (c) identify each of their bank accounts held at such banks as being held by a debtor in possession in a bankruptcy case.

8. Pursuant to Local Rule 2015-2(a), the Debtors are authorized to continue to use their existing checks, correspondence, and other business forms without alteration or change and without the designation "Debtor in Possession" or a bankruptcy case number imprinted upon them.  Notwithstanding the foregoing, once the Debtors' existing checks have been used, the Debtors shall, when reordering checks, require the designation "Debtor in Possession" and the corresponding bankruptcy case number on all checks; provided that, with respect to checks that the Debtors or their agents print themselves, the Debtors shall begin printing the "Debtor in Possession" legend on such items within ten (10) days of the date of entry of this Final Order.

9. *Nunc pro tunc* to the Petition Date, and subject to the terms of this Final Order, all Banks at which the Debtor Bank Accounts are maintained are authorized to continue to

administer, service, and maintain the Debtor Bank Accounts as such accounts were administered, serviced, and maintained prepetition, without interruption and in the ordinary course (including making deductions for Bank Fees and Expenses), and to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, credit card payments, and ACH transfers issued and drawn on the Debtor Bank Accounts after the Petition Date by the holders or makers thereof, as the case may be, and, when requested by the Debtors in their sole discretion, to receive, process, honor, and pay, to the extent of available funds, any and all checks, drafts, wires, ACH transfers, electronic fund transfers, or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising on or after the Petition Date; provided, however, that unless otherwise ordered by the Court, no checks, drafts, electronic funds transfers (excluding any electronic funds transfer that the Banks are obligated to settle), or other items presented, issued, or drawn on the Debtor Bank Accounts on account of a claim against the Debtors arising prior to the Petition Date shall be honored.

10.     The relief granted in this Final Order is extended to any new bank account opened by the Debtors at the Banks after the date hereof.

11.     All Banks provided with notice of this Final Order maintaining any of the Debtor Bank Accounts shall not honor or pay any bank payments drawn on the listed Debtor Bank Accounts or otherwise issued before the Petition Date for which the Debtors specifically issue stop payment orders in accordance with the documents governing such Debtor Bank Accounts.

12.     Each Bank shall implement reasonable handling procedures designed to effectuate the terms of this Final Order.  No Bank that implements such handling procedures and then honors a prepetition check or item drawn on any account that is the subject of this Final

Order (x) at the direction of the Debtors to honor such prepetition check or item, (y) in the good faith belief that the Court has authorized such prepetition check or item to be honored, or (z) as a result of a good faith error made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates on account of such prepetition check or item being honored postpetition or otherwise in violation of this Final Order.

13.    The Debtors, with the consent of the Required Lenders, are authorized to implement such reasonable changes, consistent with this Final Order, to the Cash Management System as the Debtors may deem necessary or appropriate, including, without limitation, closing any of the Debtor Bank Accounts or opening any additional bank accounts following the Petition Date (the "**Additional New Accounts**") wherever the Debtors deem that such accounts are needed or appropriate, and to enter into any ancillary agreements related to the foregoing, as they may deem necessary and appropriate, subject to the terms and provisions of the Debtors' agreements with the Banks.  Notwithstanding the foregoing, the Debtors shall open such Additional New Account(s) at banks that have executed a Uniform Depository Agreement with the U.S. Trustee, or at such banks that are willing to immediately execute such an agreement, and any Additional New Account that the Debtors open shall be (i) at one of the existing Banks or with a bank that is organized under the laws of the United States of America or any state therein, and that is insured by the FDIC or the Federal Savings and Loan Insurance Corporation and (ii) designated a "Debtor in Possession" account by the relevant bank.  The Additional New Accounts are deemed to be Debtor Bank Accounts and are similarly subject to the rights, obligations, and relief granted in this Final Order.  The Banks are authorized to honor the Debtors' requests to open or close (as the case may be) such Debtor Bank Account(s) or Additional New Account(s), and (b) accept and hold, or invest, the Debtors' funds in accordance

with the Debtors' instructions; *provided* that the Banks shall not have any liability to any party for relying upon such representations. In the event that the Debtors open or close any Debtor Bank Accounts(s) or Additional New Account(s), such opening or closing shall be timely indicated on the Debtors' monthly operating reports and notice of such opening or closing shall be provided to the U.S. Trustee, counsel to the administrative agent for the Debtors' prepetition secured financing, counsel to the ad hoc group of lenders under the Debtors' prepetition secured financing, counsel to the lenders under the Debtors' postpetition secured financing, and counsel to any official committee of unsecured creditors appointed in these Chapter 11 Cases within fifteen (15) days; provided, further, however, that the opening or closing of any bank account shall be in accordance with the terms of the Debtors' postpetition secured financing.

14.     The Debtors are authorized to deposit funds in accordance with existing practices under the Cash Management System as in effect as of the Petition Date (subject to the modifications set forth in the Motion and this Final Order), and any other reasonable changes to the Cash Management System consistent with this Final Order that the Debtors may implement.

15.     In the course of providing cash management services to the Debtors, the Banks are authorized, without further order of this Court, to deduct the applicable service fees from the appropriate Debtor Bank Accounts in the ordinary course of business, when such fees are otherwise due and payable.

16.     Subject to the terms set forth herein, any bank, including the Banks, may rely upon the representations of the Debtors with respect to whether any check, draft, wire, or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this or any other order of this Court, and the Banks shall not have any liability to any party for relying on such representations by the Debtors as provided for herein.

17.     The requirement of the UST Guidelines to establish separate accounts for cash collateral and/or tax payments is hereby waived except as otherwise required by any applicable agreements between the Debtors and the Banks.

18.     Nothing contained in the Motion or this Final Order shall be construed to (a) create or perfect, in favor of any person or entity, any interest in cash of a Debtor that did not exist as of the Petition Date, or (b) alter or impair any security interest or perfection thereof, in favor of any person or entity, that existed as of the Petition Date; provided that, for the avoidance of doubt, the (x) Prepetition Lenders' perfected lien on and security interest in any cash and other amounts (including, without limitation, the proceeds thereof) held in the Prepetition Bank Accounts (whether perfected by possession, control or otherwise), shall be deemed to be automatically attached and vested in such cash or other amounts (including, without limitation, the proceeds thereof) to the extent transferred to the New Operating Account or any Additional New Account as of the date of the opening of such New Operating Account or Additional New Account, as applicable, and (y) the Prepetition Lenders shall have automatically (and without any further action) a valid, perfected lien on and security interest in the New Operating Account and any Additional New Account arising as a result of the operations of the Debtors or otherwise (and all amounts and other assets deposited therein), in the case of each of (x) and (y), without the need to enter into any deposit account control agreements or similar documents or take any other actions to perfect their security interest in such cash or other amounts; provided, further, that the Prepetition Lenders may enter into deposit account control agreements or similar documents in respect of the New Operating Account and/or any Additional New Accounts without seeking modification of the automatic stay under section 362 of the Bankruptcy or any other court approval.

19.     Despite the Debtors' use of a consolidated Cash Management System, the Debtors shall calculate any quarterly fees due under 28 U.S.C. § 1930(a)(6) based on the individual disbursements of each Debtor, regardless of which Debtor is responsible for payment of such fees.

20.     Notwithstanding anything to the contrary in this Final Order or to the Motion, any payment, obligation, or other relief authorized by this Final Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition financing, or any budget in connection therewith (including, without limitation, the Approved Budget), approved by this Court in these Chapter 11 Cases.

21.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Final Order, shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

22.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

23.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Final Order is necessary to avoid immediate and irreparable harm.

24.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Final Order shall be effective and enforceable immediately upon entry hereof.

25.     The Debtors are authorized to take such actions and to execute such documents necessary to effectuate the relief granted by this Final Order in accordance with the Motion.

26.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Final Order.

Dated: _____, 2017
        Wilmington, Delaware

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE