## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------ x

In re:                                                  :    Chapter 11
                                                        :
PANDA TEMPLE POWER, LLC, et al.,                        :    Case No. 17-_____ (_____)
                                                        :
Debtors. [1]                                            :    Joint Administration Pending
                                                        :

------------------------------------------------------------ x

### MOTION OF DEBTORS FOR ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 364(c), 1107, AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING DEBTORS TO (I) PAY THEIR PREPETITION INSURANCE OBLIGATIONS, (II) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND (III) MAINTAIN POSTPETITION FINANCING OF INSURANCE PREMIUMS

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby move (the "**Motion**") for entry of an order substantially in the form attached hereto as Exhibit A (the "**Order**"), under Sections 105(a), 363(b), 364(c), 1107, and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 6003 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), authorizing the Debtors to (a) continue to administer insurance coverage currently in effect, as set forth below, and pay all prepetition premiums, taxes, charges, fees, and other obligations owed under or with respect thereto (including the fees and commissions due to the Debtors' Broker (as defined below)) (collectively, the "**Prepetition Insurance Obligations**"), to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles, and other obligations (including the fees and commissions due to the Debtors' Broker) relating to the

---

[1] The Debtors in these cases are Panda Temple Power, LLC and Panda Temple Power Intermediate Holdings II, LLC. The last four digits of Panda Temple Power, LLC's federal tax identification number are 8214. Panda Temple Power Intermediate Holdings II, LLC is a disregarded entity for federal income tax purposes and, as such, does not have a federal tax identification number. The Debtors' mailing address is 5001 Spring Valley Road, Suite 1150 West, Dallas, TX 75244.

insurance coverage and related programs, and any other additional, revised, supplemental, or renewed insurance policies or programs obtained by the Debtors (the "**Postpetition Insurance Obligations**" and together with the Prepetition Insurance Obligations, the "**Insurance Obligations**"), as such payments become due; (c) renew, revise, extend, supplement, or change the Debtors' insurance coverage as needed in the ordinary course of business; and (d) maintain or renew current, or enter into new, postpetition financing arrangements with respect to insurance premiums.   In support of the Motion, the Debtors rely upon and incorporate by reference the *Declaration of Alison R. Zimlich, Chief Financial Officer, Chief Risk Officer, and Treasurer of Panda Temple Power, LLC in Support of Chapter 11 Petitions and First Day Pleadings*, filed with the Court concurrently herewith (the "**Zimlich Declaration**").[2]  In further support of the Motion, the Debtors, by and through their undersigned counsel, respectfully represent:

## JURISDICTION

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue of these cases and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.  The statutory predicates for the relief requested herein are Bankruptcy Code Sections 105(a), 363, 364, 1107, and 1108.  Such relief is warranted under Bankruptcy Rule 6003 and Rule 9013-1(m) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**").

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Zimlich Declaration.

**BACKGROUND**

2.       On the date hereof (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under Chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").   The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the Zimlich Declaration.

3.       The Debtors continue to manage and operate their businesses as debtors in possession pursuant to Bankruptcy Code Sections 1107 and 1108.  No trustee or examiner has been requested in the Chapter 11 Cases and no committees have yet been appointed.

**RELIEF REQUESTED**

4.       By this Motion, the Debtors request entry of an order, substantially in the form of Exhibit A attached hereto, authorizing, but not directing, the Debtors to (a) continue to administer the Insurance Policies (as defined below) and pay their Prepetition Insurance Obligations, to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate; (b) in the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles, and other obligations relating to their Postpetition Insurance Obligations, as such payments become due; (c) renew, revise, extend, supplement, or change the Debtors' insurance coverage as needed in the ordinary course of business, and (d) maintain or renew current, or enter into new, postpetition financing arrangements with respect to insurance premiums.

5.       The Debtors propose to limit the aggregate amount of payments for Prepetition Insurance Obligations under this Motion to $15,000 unless further authorization is obtained from this Court.

|US-DOCS\83089874.10||

6.      While the Debtors do not believe Court approval is required to maintain their existing Insurance Policies or to amend, extend, or renew the Insurance Policies in the ordinary course of business, out of an abundance of caution, the Debtors request entry of an order authorizing them to take such actions and to pay their Postpetition Insurance Obligations where necessary to maintain their Insurance Policies.

7.      Finally, the Debtors request that the Court authorize and direct the Debtors' banks and financial institutions to receive, process, honor, pay, and, if necessary, reissue all prepetition and postpetition checks, including prepetition checks that the Debtors reissue postpetition, and fund transfers on account of the Insurance Obligations and authorize the Debtors' banks and financial institutions to rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid in respect of the Insurance Obligations, provided that sufficient funds are on deposit in the applicable accounts to cover such payments.

## BASIS FOR RELIEF

### A.      The Debtors' Insurance Obligations

8.      In the ordinary course of the Debtors' businesses, the Debtors maintain certain insurance policies that are administered by multiple third-party insurance carriers (the "**Insurance Carriers**"), which provide coverage for, among other things, general liability, umbrella liability, excess umbrella liability, automobile liability, pollution liability, and property liability (collectively, the "**Insurance Policies**").  A detailed list of the Insurance Policies that are currently held by the Debtors is attached hereto as Exhibit B.[3]  The Insurance Policies are

---

[3] The Debtors are also additional insured parties under general liability, umbrella liability, and directors' and officers' liability policies held by certain affiliates of the Debtors.  In addition, Panda Temple Power, LLC is an additional insured party under a workers' compensation policy held by PPG-O&M Panda Temple Power, LLC, an affiliate that provides operation and maintenance services to Panda Temple Power, LLC.  The Debtors do not make payments on account of these policies and, therefore, do not seek any relief under this Motion with respect to such policies.

essential to the preservation of the Debtors' businesses, property, and assets, and, in some cases, such coverage is required by various federal and state laws and regulations, as well as the terms of the Debtors' various commercial contracts.  The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry.

9.       AON Risk Services Southwest, Inc. (the "**Broker**") serves as the Debtors' insurance broker and also manages the Debtors' relationships with the Insurance Carriers. Among other things, the Broker assists the Debtors in selecting the appropriate carriers (subject to the approval of the Debtors) and represents the Debtors in their negotiations with the Insurance Carriers.  The employment of the Broker has allowed the Debtors to obtain the insurance coverage necessary to operate their businesses in a reasonable and prudent manner and to realize savings in the procurement of such policies.  The Broker is paid a commission, plus certain additional administrative fees, in connection with the placement of each Insurance Policy. In 2016, the Debtors paid approximately $176,500.00 in the aggregate to the Broker in connection with such services.  The Debtors believe that there are no accrued and unpaid commissions or fees owed to the Broker as of the Petition Date.

10.      Maintenance of insurance coverage under the various Insurance Policies on an uninterrupted basis is essential to the continued operation of the Debtors' businesses and, in many cases, is required under the United States Trustee's Operating Guidelines for Chapter 11 Cases (the "**Operating Guidelines**"), the federal laws and regulations applicable to the Debtors' businesses, Texas state law, and the Debtors' various contractual commitments.  Thus, the Debtors submit that they should be authorized to continue to pay premiums, taxes, charges, fees, and other obligations owed under or with respect to the Insurance Policies as such obligations come due in the ordinary course of the Debtors' businesses.

|US-DOCS\83089874.10||

11.      The Debtors request authorization to pay any Prepetition Insurance Obligations to the extent that the Debtors determine, in their sole discretion, that such payment is necessary to avoid cancellation, default, alteration, assignment, attachment, lapse, or any form of impairment to the coverage, benefits, or proceeds provided under the Insurance Policies, and to maintain good relationships with the various Insurance Carriers and the Broker.  The Debtors' maintenance of their relationships with the Insurance Carriers and the Broker is critical to ensuring the continued availability of insurance coverage and reasonable pricing of such coverage for future policy periods.  The Debtors additionally request, out of an abundance of caution, authority to renew or replace the Insurance Policies as they may expire or lapse in the ordinary course.

12.      The Debtors will need to continue their insurance coverage throughout the duration of these Chapter 11 Cases.  The Debtors respectfully submit that the maintenance of their existing Insurance Policies falls squarely within their ordinary course of business and have only sought relief within this Motion out of an abundance of caution.  To reduce both the administrative burden on these Chapter 11 Cases and the expense of operating as debtors in possession, the Debtors request authorization to maintain, amend, extend or renew the Insurance Policies, as necessary, in the ordinary course of business.

13.      The total amount paid on account of annual premiums and payments associated with the Insurance Policies is approximately $1,400,000.  Each of the Debtors' Insurance Policies, with the exception of the Debtors' pollution liability policy, is an annual policy that expires on July 11, 2017.  The Debtors' pollution liability policy is a three-year policy that expires on September 22, 2017.  Premiums under the general liability, automobile, umbrella, and excess umbrella policies are paid in quarterly installments through the Broker.  The final

6

quarterly installment payments for such policies were paid on March 31, 2017.  The premiums for the Debtors' property insurance policies and the pollution policy were due in full at the beginning of the applicable policy period.  The pollution policy premium was paid by the Debtors in full, while the premiums for the property insurance policies were financed pursuant to a premium financing agreement as discussed more fully below.

14.     The Debtors are not aware of any pending requests for payment under the Insurance Policies.  However, in the event that a request for payment of amounts attributable to the period prior to the Petition Date is outstanding or is received by the Debtors in accordance with the Insurance Policies, the Debtors request authority to pay such prepetition amounts in their sole discretion.

15.     Moreover, the Debtors believe that it is in the best interests of their creditors and estates to continue their business relationship with the Broker.  As noted above, the Debtors believe that there are no accrued and unpaid commissions or fees owed to the Broker as of the Petition Date.

B.     **The Premium Financing Agreements**

16.     As noted above, in connection with the operation of their businesses and management of their properties, the Debtors maintain various property insurance policies.  Because it is often not economically advantageous for the Debtors to pay their insurance premiums on a lump-sum basis, and in an effort to manage cash flows most efficiently, the Debtors have historically financed their property insurance premiums pursuant to premium financing arrangements with Aon Premium Finance, LLC ("**AFCO**").  The current property insurance policies were financed pursuant to a Commercial Insurance Premium Finance and Security Agreement between the Debtors and AFCO (the "**Property PFA**").

7

17.     Under the Property PFA, the Debtors made an initial down payment of $329,295.58, which is equal to approximately 25% of the premiums due under the relevant Insurance Policies for the policy period running from July 11, 2016 through July 11, 2017.  The Debtors paid the remaining balance in three (3) quarterly payments of $329,295.58, each of which included interest at a rate of 3.890%.  The Debtors believe that, as of the Petition Date, no amounts are due and owing to AFCO in connection with the Property PFA.

## APPLICABLE AUTHORITY

**A.      Payment of the Insurance Obligations and Renewal of the Insurance Policies is Necessary to Comply with United States Trustee Requirements**

18.     Maintenance of insurance coverage under the various Insurance Policies is essential to the continued operation of the Debtors' businesses and is required under the Operating Guidelines, the federal laws and regulations applicable to the Debtors' business, Texas state law, and the Debtors' various contractual commitments.  See Operating Guidelines Sec. 6 (requiring maintenance of appropriate insurance coverage).

19.     The Debtors believe that the ordinary course maintenance of their necessary insurance coverage, including paying all Insurance Obligations, satisfying all postpetition commitments to the Insurance Carriers, renewing the Insurance Policies, or entering into new insurance or premium financing arrangements, without further order of the Court, is necessary and essential to the Debtors' achievement of their chapter 11 objectives, especially where, as here, the Debtors' failure to take all actions necessary to honor their obligations to and preserve their relationships with the Insurance Carriers could have disastrous consequences for the Debtors' estates.

20.     Moreover, because the employment of the Broker is necessary for the ordinary course maintenance of the Insurance Policies in the most efficient, cost-effective

||US-DOCS\83089874.10||

manner (and has the additional benefit of positioning the Debtors to obtain the most competitive rates and high quality service from the Broker in connection with any renewals of the Insurance Policies), the Debtors believe that they should be authorized to continue to pay, as they come due, any fees or other amounts owed to the Broker, as well as any accrued and unpaid amounts owed to the Broker as of the Petition Date.

**B.      Bankruptcy Code Section 105 and the Doctrine of Necessity Support Payment of the Insurance Obligations**

21.      The proposed payments of the Insurance Obligations should be authorized pursuant to Bankruptcy Code Section 105 and under the "doctrine of necessity."  Bankruptcy Code Section 105 authorizes this Court "to issue any order . . . necessary or appropriate to carry out the provisions" of the Bankruptcy Code.  11 U.S.C. § 105.  The doctrine of necessity is a well-settled doctrine in this jurisdiction that permits a bankruptcy court to authorize payment of certain prepetition claims prior to the completion of the reorganization process where the payment of such claims is necessary to the reorganization.  See In re Just for Feet, Inc., 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain prepetition claims, the doctrine of necessity should be invoked to permit payment);[4] see also In re NVR L.P., 147 B.R. 126, 127 (Bankr. E. D. Va. 1992) ("[T]he court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the

---

[4] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).  The United States Supreme Court first articulated the doctrine of necessity over a century ago, in Miltenberger v. Logansport, C. & Sw. Ry. Co., 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership.  See id. at 309-14.  The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in Miltenberger. See In re Lehigh & New Eng. Ry., 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation . . . in serious jeopardy.").

debtor."); In re Eagle-Picher Indus., Inc., 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) ("[T]o justify payment of a prepetition unsecured creditor, a debtor must show the payment is necessary to avert a serious threat to the Chapter 11 process.").

22.     For the reasons stated herein, and in light of the risks applicable to the Debtors' operations and the critical need for the Debtors to protect their assets and recoverable value from such risks through, among other things, maintenance of legally-mandated insurance coverage and good relationships with the Insurance Carriers and the Broker, payment of the Insurance Obligations is proper and in accordance with Bankruptcy Code Section 105.  Payment of the Insurance Obligations is necessary to the Debtors' achievement of their chapter 11 objectives.

**C.     Bankruptcy Code Section 363 Supports Payment of the Insurance Obligations**

23.     To the extent that payment of any of the Insurance Obligations sought to be paid under this Motion would be deemed to constitute a use of property outside the ordinary course of business, a basis for authorizing payment of the amounts associated with such obligations is found under Bankruptcy Code Section 363(b).  Bankruptcy Code Section 363(b)(1) provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b)(1).  Under this section, a court may authorize a debtor to pay certain prepetition claims so long as a sound business purpose exists for the transaction.  See, e.g., In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  "In evaluating whether a sound business purpose justifies the use, sale or lease of property under Section 363(b) [of the bankruptcy code], courts consider a variety of factors, which essentially represent a 'business judgment test.'"  In re Montgomery Ward Holding Corp., 242 B.R. 147, 153 (D. Del. 1999).  Once the debtor articulates a reasonable basis for its business decisions, "courts will generally not entertain

||US-DOCS\83089874.10||

objections to the debtor's conduct." Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).   There is a presumption that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company."   In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985))

24.    The Debtors have routinely paid premiums, taxes, charges, fees, and other obligations in connection with their Insurance Policies, and, thus, view the payments of such obligations as ordinary course payments.   To the extent the Court (or any party in interest) believes that this Court's express authorization under Bankruptcy Code Section 363(b) is necessary to honor the Insurance Obligations, however, the Debtors' assert that sound business judgment supports the relief requested herein because the failure to pay such obligations could result in the cancellation of Insurance Policies, the Debtors' inability to obtain renewal of the Insurance Policies on terms that are as competitive, and the violation of the Operating Guidelines, the various applicable federal and state laws and regulations, various contractual commitments, and the fiduciary duties of the debtors in possession.   Each of these outcomes would be detrimental to the Debtors, their creditors, and their estates.   Accordingly, the Debtors submit that they have satisfied the requisite standard applied to requests under Bankruptcy Code Section 363(b) and, to the extent necessary, this Court should authorize the payment of all Insurance Obligations on such basis.

**D.    Bankruptcy Code Sections 363 and 364 Support the Debtors' Request to Maintain Postpetition Insurance Coverage and Premium Financing Agreements, and Enter into New Coverage as Needed**

25.    The Debtors submit that Bankruptcy Code Section 363(c) provides statutory authority for the Debtors' request for authorization to satisfy all of the Debtors'

11

postpetition commitments with respect to the Insurance Carriers and the Broker, renew the Insurance Policies and Property PFA, or enter into new insurance policies and premium financing arrangements in the Debtors' sole discretion.  In pertinent part, Bankruptcy Code Section 363(c)(1) provides that ". . . unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing."  11 U.S.C. § 363(c)(1).  The maintenance of the Insurance Policies and the Property PFA, and honoring of postpetition obligations arising thereunder, including undertaking renewals of the Insurance Policies as they expire or entering into new insurance arrangements or premium financing arrangements, are each the type of ordinary course transactions contemplated by the foregoing provision.  To the extent, however, that this Court believes that any such actions are not properly characterized as transactions in the ordinary course of the Debtors' business, the Debtors respectfully request that this Court authorize the Debtors to take such actions pursuant to Bankruptcy Code Section 363(b) as a reasonable exercise of their business judgment.

26.    The Court may also authorize the Debtors to enter into new premium finance agreements pursuant to section 364(c)(2) of the Bankruptcy Code.  Section 364(c)(2) authorizes, after notice and a hearing, a debtor in possession to obtain debt secured by a lien on property of the estate.  *See* 11 U.S.C. § 364(c)(2).  Under any new premium finance agreement, the counterparty would likely require that the Debtors grant a security interest in the unearned premiums under the financed policies.

27.    Section 364(c) authorizes a debtor, in the exercise of its business judgment, to incur secured debt if the debtor has been unable to obtain unsecured credit and the

borrowing is in the best interests of the estates. *See, e.g., In re General Growth Props., Inc.*, 412 B.R. 122, 125-26 (Bankr. S.D.N.Y., May 14, 2009) (granting motion for post-petition financing upon finding that a) "no comparable credit [was] available on more favorable terms"; b) that the debtors needed post-petition financing to "to preserve [their] assets and continue their operations; and c) that the terms and conditions of the DIP Documents had been negotiated in good faith); *In re Budget Grp., Inc.*, Case No. 02-12152, 2002 Bankr. LEXIS 1050, *6 (Bankr. D. Del. Aug, 1, 2002) (authorizing funding of acquisition of property on a secured basis where acquired property was necessary to maintain operations and debtor could not obtain such funding on an unsecured basis). The Debtors believe that borrowing to maintain essential insurance coverage is in the best interests of the Debtors' estates, and as such, the Court should authorize the Debtors to renew the Property PFA and/or execute new premium finance agreements post-petition under substantially similar terms.

**E.    Precedent Cases Support the Granting of the Requested Relief**

28.    Relief similar to the relief requested herein has been granted in this district in numerous chapter 11 cases.  See, e.g., In re Chaparral Energy, Inc., Case No. 16-11144 (LSS) (Bankr. D. Del. May 11, 2016) (authorizing debtors to maintain insurance coverage); In re SDI Solutions LLC, et al., No. 16-10627 (CSS) (Bankr. D. Del. March 16, 2016) (same); In re Paragon Offshore plc, et al., No. 16-10386 (CSS) (Bankr. D. Del. March 9, 2016) (same); In re Swift Energy Co., et al., No. 15-12670 (MFW) (Bankr. D. Del. Jan. 5, 2016) (same); In re Samson Resources Corp., et al., No. 15-11934 (CSS) (Bankr. D. Del. Oct. 14, 2015) (same); In re Haggen Holdings, LLC, No. 15-11874 (KG) (Bankr. D. Del. Oct. 2, 2015) (authorizing debtors to continue their pre-petition and enter into new post-petition insurance premium financing agreements); In re Trump Entertainment Resorts, Inc., No. 14-12103 (KG) (Sept. 10, 2014) (same).

## BANKRUPTCY RULE 6003 HAS BEEN SATISFIED AND
## BANKRUPTCY RULE 6004 SHOULD BE WAIVED

29.     Pursuant to Bankruptcy Rule 6003, the Court may grant relief regarding a motion to pay all or part of a prepetition claim within twenty-one (21) days after the Petition Date if the relief is necessary to avoid immediate and irreparable harm.  See Fed. R. Bankr. P. 6003(b).  Based on the foregoing, the Debtors submit that they have satisfied the requirements of Bankruptcy Rule 6003(b) because the relief set forth in Exhibit A is necessary to avoid immediate and irreparable harm to the Debtors.

30.     To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code Section 363(b), the Debtors request a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the fourteen (14) day stay under Bankruptcy Rule 6004(h).   As described above, the relief that the Debtors request in this Motion is immediately necessary in order for the Debtors to be able to continue to operate their businesses and preserve the value of their estates.  The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the fourteen (14) day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## CONSENT TO JURISDICTION

31.     Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final judgment or order absent consent of the parties.

## NOTICE

32.     Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of Delaware; (b) counsel to the administrative agent for the Debtors'

14

prepetition secured financing; (c) Stroock & Stroock & Lavan LLP and Young Conaway Stargatt & Taylor LLP, co-counsel to the lenders under the Debtors' proposed postpetition secured financing and co-counsel to the ad hoc group of lenders under the Debtors' prepetition secured financing; (d) the Internal Revenue Service; (e) the Environmental Protection Agency and similar state environmental agencies for states in which the Debtors conduct business; (f) the United States Attorney for the District of Delaware; (g) the Attorney General for the state of Texas; (h) the parties included on the Debtors' consolidated list of thirty (30) largest unsecured creditors; (i) the Insurance Carriers; (j) the Broker; (k) AFCO; and (l) all parties entitled to notice pursuant to Local Rule 9013-1(m) (collectively, the "**Notice Parties**").   As this Motion is seeking "first day" relief, this Motion and any order entered hereon will be served in accordance with Local Rule 9013-1(m).   The Debtors submit that, under the circumstances, no other or further notice is required.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order, substantially in the form attached hereto as <u>Exhibit A</u>, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated:  April 17, 2017
       Wilmington, Delaware

/s/ *John H. Knight*

John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Brendan J. Schlauch (No. 6115)
Christopher M. De Lillo (No. 6355)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King St.
Wilmington, Delaware 19801
Telephone: 302-651-7700
Fax: 302-651-7701
E-mail: knight@rlf.com
       heath@rlf.com
       schlauch@rlf.com
       delillo@rlf.com

- and -

Keith A. Simon
Annemarie V. Reilly
LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4834
Telephone:  212-906-1200
Fax:  212-751-4864
Email: keith.simon@lw.com
       annemarie.reilly@lw.com

*Proposed Counsel for Debtors and*
*Debtors in Possession*

**EXHIBIT A**

**Proposed Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
--------------------------------------------------------- x
```
In re:                                          :      Chapter 11
                                                :
PANDA TEMPLE POWER, LLC, et al.,                :      Case No. 17-_____ (_____)
                                                :
        Debtors. [1]                            :      Jointly Administered
                                                :
```
--------------------------------------------------------- x
```

### ORDER UNDER 11 U.S.C. §§ 105(a), 363(b), 364(c), 1107, AND 1108 AND FED. R. BANKR. P. 6003 AUTHORIZING DEBTORS TO (I) PAY THEIR PREPETITION INSURANCE OBLIGATIONS, (II) MAINTAIN THEIR POSTPETITION INSURANCE COVERAGE, AND (III) MAINTAIN POSTPETITION FINANCING OF INSURANCE PREMIUMS

Upon the motion (the "**Motion**")[2] of the Debtors for an Order, under Bankruptcy Code Sections 105, 363, 364, 1107, and 1108 and Bankruptcy Rule 6003, authorizing the Debtors to (a) continue to administer the Insurance Policies and pay their Prepetition Insurance Obligations, to the extent the Debtors determine in their absolute discretion that such payments are necessary or appropriate, (b) in the ordinary course of business, pay all postpetition premiums, administrative fees, deductibles, and other obligations relating to their Postpetition Insurance Obligations, as such payments become due, (c) renew, revise, extend, supplement, or change the Debtors' insurance coverage as needed in the ordinary course of business, and (d) maintain or renew current, or enter into new, postpetition financing arrangements with respect to insurance premiums; and the Court having reviewed the Motion and the Zimlich Declaration; and the Court having determined that the relief requested in the Motion is in the best

---

[1] The Debtors in these cases are Panda Temple Power, LLC and Panda Temple Power Intermediate Holdings II, LLC. The last four digits of Panda Temple Power, LLC's federal tax identification number are 8214. Panda Temple Power Intermediate Holdings II, LLC is a disregarded entity for federal income tax purposes and, as such, does not have a federal tax identification number. The Debtors' mailing address is 5001 Spring Valley Road, Suite 1150 West, Dallas, TX 75244.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

interests of the Debtors, their estates, their creditors, and other parties in interest; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

**ORDERED, ADJUDGED AND DECREED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      The Debtors are authorized, but not directed, to continue their Insurance Policies, and to pay any Insurance Obligations, whether arising prepetition or postpetition.

3.      All payments on account of Prepetition Insurance Obligations under the Motion and this Order shall not exceed $15,000 in the aggregate without further order of this Court.

4.      The Debtors are authorized, but not directed, to (a) honor their commitments and obligations under the Insurance Policies and the Property PFA, as applicable; (b) renew the existing Insurance Policies and Property PFA or enter into new insurance policies or premium financing agreements as needed in the Debtors' business judgment; and (c) maintain, revise, extend, supplement, or change insurance coverage or premium financing arrangements as needed in the Debtors' business judgment.

5.      The Debtors are authorized to pay the fees, costs, and commissions of the Broker in connection with the Insurance Policies in the ordinary course of business, including any accrued and unpaid amounts owed to the Broker as of the Petition Date.

|US-DOCS\83089874.10||

6.      The Debtors' banks and financial institutions shall be, and hereby are, authorized, when requested by the Debtors in their sole discretion, to process, honor, pay, and, if necessary, reissue any and all checks, including prepetition checks that the Debtors reissue postpetition, and electronic fund transfers drawn on the Debtors' bank accounts relating to the Insurance Obligations, whether such checks were presented or funds transfer requests were submitted prior to or subsequent to the Petition Date, provided that sufficient funds are available in the applicable accounts to make the payments.

7.      The Debtors' banks and financial institutions may rely on the representations of the Debtors with respect to whether any check or other transfer drawn or issued by the Debtors prior to the Petition Date should be honored pursuant to this Order, and any such Bank shall not have any liability to any party for relying on such representations by the Debtors as provided for in this Order.

8.      The Debtors are hereby authorized, but not directed, to issue postpetition checks or to effect postpetition fund transfer requests in replacement of any checks or fund transfer requests with respect to Prepetition Insurance Obligations dishonored or denied as a consequence of the commencement of the Chapter 11 Cases, and to reimburse any expenses that holders of claims in connection with the Prepetition Insurance Obligations may incur as a result of any bank's failure to honor a prepetition check.

9.      Notwithstanding the relief granted herein or any actions taken hereunder, nothing contained in this Order shall create any rights in favor of, or enhance the status of any claim held by, any person to whom any of the Insurance Obligations may be owed.

10.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an assumption of any executory contract,

3

or otherwise shall constitute a waiver of the Debtors' rights under Bankruptcy Code Section 365 or an admission by the Debtors that any of the Insurance Policies, or any related agreements or contracts constitutes an executory contract within the meaning of Bankruptcy Code Section 365.

11.     Neither the provisions contained herein, nor any actions or payments made by the Debtors pursuant to this Order, shall be deemed an admission as to the validity of any underlying obligation or a waiver of any rights the Debtors may have to dispute such obligation on any ground that applicable law permits.

12.     Notwithstanding anything to the contrary contained in this Order or in the Motion, any payment, obligation, or other relief authorized by this Order shall be subject to and limited by the requirements imposed on the Debtors under the terms of any interim and/or final orders regarding the use of cash collateral or the approval of postpetition financing, or any budget in connection therewith (including, without limitation, the Approved Budget), approved by this Court in these Chapter 11 Cases.

13.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Order shall be effective and enforceable immediately upon entry hereof.

14.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

15.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied because the relief set forth in this Order is necessary to avoid immediate and irreparable harm.

16.     The Debtors are hereby authorized to take such actions and to execute such documents as may be necessary to implement the relief granted by this Order.

17.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and/or enforcement of this Order.

Dated: April ___, 2017
        Wilmington, Delaware


_____
THE HONORABLE _____
UNITED STATES BANKRUPTCY JUDGE

5

|US-DOCS\83089874.10||

**EXHIBIT B**

Policy Schedule

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****803P | Associated Electric & Gas Insurance Services Limited ("AEGIS") | $225,261 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****3 306 | National Union Fire Insurance Company of Pittsburgh, PA | $187,717 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****016-1 | General Security Indemnity Company of Arizona | $93,858 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****69-02 | The Princeton Excess and Surplus Lines Insurance Company | $104,287 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****69 02 | Westport Insurance Corporation (a member of Swiss Re Corporate Solutions) | $93,858 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****0116 | Lloyds of London | $312,863 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****6897 | Allianz Global Risks US Insurance Company | $125,145 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****7A16 | Lloyds of London Talbot Underwriting Services (US) Ltd. | $25,029 |
| Property Insurance Policy | 07/11/2016 to 07/11/2017 | ****R16A | XL Insurance America, Inc. | $93,858 |
| Pollution Liability | 9/22/2014 to 9/22/2017 | ****81 01 | Great American E&S Insurance Company | $42,000 |
| Automobile Liability | 07/11/2016 to 07/11/2017 | ****48-21 | Great Northern Insurance Company | $3,500 |
| Umbrella Liability | 07/11/2016 to 07/11/2017 | ****6598 | Federal Insurance Company | $39,500 |

| POLICY TYPE | EFFECTIVE PERIOD | POLICY NUMBER | CARRIER | APPROXIMATE ANNUALIZED GROSS PREMIUM |
|---|---|---|---|---|
| Excess Umbrella Liability | 07/11/2016 to 07/11/2017 | **** 97 73 | The Ohio Casualty Insurance Company | $16,000 |
| General Liability | 07/11/2016 to 07/11/2017 | ****3895 | Great Northern Insurance Company | $40,000 |

2